```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X
```

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 20 2019 ★
BROOKLYN OFFICE

UNITED STATES OF AMERICA

- against -

CHRISTIAN TRUNZ,

             Defendant.

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - X
```

I N F O R M A T I O N

19 CR 375 (SJ)
(T. 7, U.S.C., §§ 6c(a)(5)(C) and 13(a)(2);
T. 18, U.S.C., § 371)

THE UNITED STATES OF AMERICA CHARGES:

<u>COUNT ONE</u>
(Conspiracy)

1.     From approximately July 2007 until approximately May 2008, the defendant, CHRISTIAN TRUNZ, was employed as a precious metals trader at a U.S. bank that was headquartered in New York ("Bank A"). In approximately May 2008, Bank A was acquired by another U.S. bank that was headquartered in New York ("Bank B"). TRUNZ has been employed as a precious metals trader at Bank B from approximately June 2008 until the date of this Information. TRUNZ worked at Bank B's offices in New York, Singapore, and London.

2.     From approximately July 2007 until approximately August 2016, while employed at Banks A and B, TRUNZ knowingly and willfully did combine, conspire, confederate, and agree with other employees of Banks A and B to engage in trading, practice, and conduct, on and subject to the rules of registered entities, namely the New York Mercantile Exchange, Inc. ("NYMEX") and Commodity Exchange, Inc. ("COMEX"), that was "spoofing," that is, bidding and offering with the intent to cancel the bid and offer before execution, in violation of Title 7, United States Code, Sections 6c(a)(5)(C) and 13(a)(2).

1

## The Purpose of the Conspiracy

3. The purpose of the conspiracy was for TRUNZ and his co-conspirators to maximize trading profits and minimize losses, at least in part for the benefit of Banks A and B.

## Manner and Means of the Conspiracy

4. The manner and means by which TRUNZ and his co-conspirators sought to accomplish and did accomplish the purpose of the conspiracy included the following:

   a. TRUNZ and his co-conspirators, in order to maximize trading profits and minimize losses for themselves and Banks A and B, placed electronic orders to buy and sell gold, silver, platinum, and palladium futures contracts with the intent to cancel those orders before execution (the "Spoof Orders"). TRUNZ learned this trading strategy from more senior traders at Banks A and B, and he personally deployed this strategy thousands of times with the knowledge and consent of his immediate supervisors.

   b. In placing the Spoof Orders, TRUNZ and his co-conspirators intended to induce other market participants to trade against the conspirators' genuine orders (that is, orders that TRUNZ and his co-conspirators did want to execute) on the opposite side of the market from the Spoof Orders at prices, quantities, and times at which the other market participants likely would not have traded otherwise.

   c. The Spoof Orders thus were designed to, and at times did, move the price of precious metals futures contracts in a direction that was favorable to TRUNZ and his co-conspirators.

Overt Acts

5. In furtherance of the conspiracy and to effect its unlawful objects, TRUNZ committed and caused to be committed the following overt act, among others:

    a. On or about June 22, 2016, at approximately 2:14:33.935 a.m. (Central Daylight Time), TRUNZ placed a genuine order to sell twenty platinum futures contracts at a price of $981.80. TRUNZ's genuine order was an "iceberg" order, meaning that only one lot was visible to other market participants at any given time. Beginning at approximately 2:14:35.926 a.m., TRUNZ placed a series of eight Spoof Orders to buy five contracts each (forty contracts total) at prices from $981.20 to $981.60. Beginning at approximately 2:14:36.520 a.m., four of the twenty contracts in his sell order were filled. Beginning at approximately 2:14:37.407 a.m., TRUNZ canceled all of his Spoof Orders in full.

In violation of Title 18, United States Code, Section 371.

## COUNT TWO
(Spoofing)

6. Paragraphs 1 through 5 of this Information are re-alleged.

7. From approximately July 2007 until approximately August 2016, while employed as a precious metals trader at Banks A and B, TRUNZ placed orders to buy and sell gold, silver, platinum, and palladium futures contracts that he intended, at the time he placed the orders, to cancel before execution. These contracts were traded on, and subject to the rules of, NYMEX and COMEX, both of which were registered entities with the United States Commodity Futures Trading Commission.

8. As an example, on or about June 22, 2016, at approximately 2:14:33.935 a.m. (Central Daylight Time), TRUNZ placed a genuine order to sell twenty platinum futures contracts

3

at a price of $981.80. TRUNZ's genuine order was an "iceberg" order, meaning that only one lot was visible to other market participants at any given time. Beginning at approximately 2:14:35.926 a.m., TRUNZ placed a series of eight Spoof Orders to buy five contracts each (forty contracts total) at prices from $981.20 to $981.60. Beginning at approximately 2:14:36.520 a.m., four of the twenty contracts in his sell order were filled. Beginning at approximately 2:14:37.407 a.m., TRUNZ canceled all of his Spoof Orders in full.

In violation of Title 7, United States Code, Sections 6c(a)(5)(C) and 13(a)(2).

ROBERT A. ZINK
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

By: _____
AVI PERRY
MATTHEW F. SULLIVAN
TRIAL ATTORNEYS