```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA,               :
                                        :
              v.                        :    ORDER
                                        :    19-CR-375 (WFK)
                                        :
CHRISTIAAN TRUNZ,                       :
                                        :
              Defendant.                :
----------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge:**

On August 20, 2019, Defendant waived indictment and pled guilty pursuant to a cooperation agreement to both counts of an Information charging him with (1) Spoofing Conspiracy, in violation of 18 U.S.C. § 371 and (2) Spoofing, in violation of 7 U.S.C. §§ 6c(a)(5)(C) and 13(a)(2). The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to time served, a $200.00 mandatory special assessment, and no additional fine.

## BACKGROUND

On August 20, 2019, Defendant waived indictment and pled guilty to both counts of an Information charging him with (1) Spoofing Conspiracy, in violation of 18 U.S.C. § 371 and (2) Spoofing, in violation of 7 U.S.C. §§ 6c(a)(5)(C), 13(a)(2).

On October 12, 2022, this case was reassigned from Judge Sterling Johnson, Jr. to the Honorable Judge William F. Kuntz, II.

The Court now sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

**I.      Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. In addition to the seven factors listed in 18 U.S.C. § 3553(a), a sentencing court must consider the

1

Sentencing Guidelines. However, the Guidelines are merely advisory in light of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 264 (2005).

Nevertheless, the sentencing range recommended by the Sentencing Guidelines is the "starting point and the initial benchmark" in evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). If a district court chooses to impose a sentence outside of the Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.* "The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.).

This Court has considered the applicable Guidelines range as well as the seven factors listed in Section 3553(a). *United States v. Crosby*, 397 F.3d 103, 112 (2d Cir. 2005). It now addresses each in turn.

## II. Analysis

### A. The History and Characteristics of the Defendant and the Nature and Circumstances of the Offense

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

1. <u>Nature and Circumstances of the Offense</u>

The Federal Bureau of Investigation ("FBI") led the investigation into the instant offense. Presentence Investigation Report ("PSR"), ECF No. 22, ¶ 5.

Defendant began his career working as a precious metals trader in July 2007, first for Bear Stearns and then for J.P. Morgan Chase Bank ("JPMorgan" or "the Bank"), following the Bank's acquisition. *Id.* ¶ 6. Throughout the course of Defendant's employment as a precious metals trader from approximately July 2007 until approximately August 2016, Defendant and his co-conspirators conspired to engage in conduct subject to the rules of the New York Mercantile Exchange, Inc. ("NYMEX") and Commodity Exchange, Inc. ("COMEX"). *Id.* ¶ 7. They also conspired to engage in "spoofing," that is, bidding and offering with the intent to cancel the bid and offer before execution. *Id.* Spoofing is widely regarded as a manipulative trading practice, designed to inject false and misleading information about the supply and demand for precious metals futures contracts into the markets in order to inflate the prices for those materials and thus maximize trading profits and minimize losses. *Id.* ¶¶ 7-8.

Defendant does not deny he relied on this tactic. *Id.* ¶ 9. Indeed, he reported he was taught this trading strategy by more senior traders at Bear Stearns and JPMorgan, and admitted he personally deployed this strategy thousands of times with the knowledge and consent of his immediate supervisors. *Id.* Furthermore, Defendant himself concedes that by placing these orders, he and his co-conspirators moved the price of precious metals futures contracts in their favor. *Id.* ¶ 11.

The Government conservatively estimates the loss attributable to Defendant and his co-conspirators' spoofing activity is $55,544,600.00. *Id.* ¶ 16. Indeed, as a result of the Bank's larger spoofing scheme, in September 2020, JPMorgan entered into a deferred prosecution

3

agreement by which it agreed to pay nine hundred and twenty million dollars ($920,000,000.00) in a criminal monetary penalty, criminal disgorgement, and victim compensation. *Id.* ¶ 15.

### 2. Family and Personal Background

Defendant was born on May 17, 1985 in New York, New York to the marital union of Charles and Geraldine Trunz. *Id.* ¶ 40. Defendant grew up in Manhasset, New York, in an upper-middle class income household, and he reported having a "wonderful" childhood, free from any hardship. *Id.* ¶ 42.

Sadly, in 2006, Defendant's mother passed away at the age of 49 due to ovarian cancer. *Id.* ¶ 40. However, his father remains in good health. *Id.* He is remarried to Beth Trunz and the couple presently resides in Locust Valley, New York. *Id.* Defendant also has three brothers, Charles, Max, and Jack Trunz, and each continues to reside in the New York area, as well. *Id.* ¶ 41.

Defendant reported he has good relationships with his family members. *Id.* ¶ 42. Indeed, Defendant stated his father, stepmother, and brothers are aware of his conviction and have remained supportive of him. *Id.* ¶¶ 40-41.

Defendant married his wife, Camila Vignaud, in 2018. Defendant and Ms. Vingaud have two young children. *Id.* Ms. Vinguad is aware of Defendant's conviction and remains supportive of him. *Id.* ¶ 43. Defendant presently lives with his wife and children in New York City. *Id.*

### 3. Educational and Employment History

Defendant graduated from Chaminade High School in Mineola, New York in June 2003. *Id.* ¶ 52. Defendant went on to earn a bachelor's degree in finance from Georgetown University in 2007. *Id.* ¶ 51.

Defendant began working for Bear Stearns upon his graduation from Georgetown. *Id.* ¶ 56. Later, in 2008, after JPMorgan acquired Bear Stearns, Defendant remained with the Bank in various roles. *Id.* Defendant continued his employment with for JPMorgan for 13 years, until he resigned in 2019. *Id.*

Between 2020 and 2022, Defendant was employed as a consultant for Inclusively, a company which assists disabled individuals in finding employment. *Id.* ¶ 55. From April 2022 until October 2022, Defendant was employed by Finclusive, a company that provides digital banking services to underserved groups. *Id.* ¶ 54.

Defendant is presently employed at 22V in an equity strategy and macro research role. PSR Addendum ¶ 54.

4. <u>Prior Convictions</u>

Defendant has no prior criminal convictions apart from the instant offense. *Id.* ¶ 36.

5. <u>Medical and Mental Health</u>

Defendant does not have any chronic or serious health problems. *Id.* ¶ 47.

6. <u>Substance Abuse</u>

Defendant reported a history of infrequent marijuana use, and alcohol consumption in social settings. *Id.* ¶ 49.

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant

with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The instant sentence recognizes the seriousness of the Defendant's offense, justly punishes him for this offense, and seeks to deter others from engaging in similar acts. In particular, the Court's sentence specifically seeks to deter this Defendant from committing future crimes.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to a two-count Information charging (1) Spoofing Conspiracy, in violation of 18 U.S.C. § 371 and (2) Spoofing, in violation of 7 U.S.C. §§ 6c(a)(5)(C) and 13(a)(2). Defendant faces various penalties for having committed these offenses, including terms of imprisonment and supervised release, in addition to fines and a special assessment.

For Count One, Defendant faces a statutory maximum term of imprisonment of five (5) years and no minimum term of imprisonment. 18 U.S.C. § 371. For Count Two, Defendant faces a statutory maximum term of imprisonment of ten (10) years and no minimum term of imprisonment. 7 U.S.C. § 13(a)(2). On Counts One and Two, Defendant faces a maximum term of supervised release of three (3) years and no minimum term of supervised release. 18 U.S.C. § 3583(b)(2).

Defendant also faces a fine of not more than two hundred and fifty thousand dollars ($250,000.00) on both Counts. 18 U.S.C. § 3571(b). The Court is also required to impose restitution in an amount to be determined by the Court pursuant to 18 U.S.C. §§ 3663A and 3664,

as well as a mandatory special assessment of $100.00 per court in accordance with 18 U.S.C. § 3013.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A).

All parties agree Defendant has a total criminal history score of zero (0) and a criminal history category of I (1). However, Probation and the Government disagree as to Defendant's total offense level.

The applicable Guideline for Spoofing Conspiracy, in violation of 18 U.S.C. § 371 and Spoofing, in violation of 7 U.S.C. §§ 6c(a)(5)(c) and 13(a)(2), is Guidelines section 2B1.1. PSR Addendum ¶ 22. Offenses covered by this section are grouped together for Guideline calculation purposes. U.S.S.G. §§ 2X1.1(a) and 2B1.1(a)(2). Therefore, the base offense level for Counts One and Two is 6 pursuant to § 2G2.2(a)(2). PSR Addendum ¶ 22.

Twenty-two levels are added pursuant to Guidelines section 2B1.1(b)(1)(L) because the loss exceeded $25,000,000.00. *Id.* ¶ 23. Two levels are added pursuant to Guidelines section 2B1.1(b)(2)(A) because the offense involved ten or more victims. *Id.* ¶ 24. Factoring in these upward adjustments, Defendant's adjusted offense level is 30.

However, several downward adjustments are warranted here. Two levels are removed pursuant to Guidelines section 3B1.2(b) because Defendant was a minor participant in the offense. *Id.* ¶ 26. This figure is reduced by an additional two-levels pursuant to Guidelines section 3E1.1(a) as Defendant has demonstrated acceptance of responsibility. *Id.* ¶ 30. Finally, an additional one

level reduction is applied pursuant to Guidelines section 3E1.1(b) because the Government was notified in a timely manner of Defendant's intention to enter a plea of guilty. *Id.* ¶ 31. Altogether, Probation calculates this results in a total adjusted offense level of 25. *Id.* ¶ 32.

The Government argues, on the other hand, Defendant's offense level should be increased by an additional two-levels pursuant to Guidelines section 2B1.1(b)(10) because the offense conduct involved sophisticated means, including a "layering" strategy designed to trick algorithmic traders, and because Defendant intentionally engaged in or caused the conduct constituting sophisticated means. Gov't Mem., ECF No. 25 at 5. As a result, the Government calculates Defendant's total adjusted offense level is 27. *Id.* at 5.

Defendant has no convictions apart from the instant offense. This results in a criminal history score of zero and a criminal history category of I. PSR ¶ 35. All parties agree on this. Therefore, based upon Probation's calculation, a total adjusted offense level of 25 and a criminal history category of I results in a recommended Guidelines range of between 57 and 71 months' imprisonment. *Id.* Based on the Government's calculation, Defendant's total adjusted offense level is more accurately 27, the recommended Guidelines range would be increased to 70 to 87 months' imprisonment. Gov't Mem. at 5. Upon careful review of both parties' calculations, the Court concurs with the Government's assessment.

Regardless, both Probation and the Government recommend the Court impose a sentence outside the recommended Guidelines ranges they calculate. Specifically, Probation recommends the Court impose a sentence of three (3) years' probation on each count, to run concurrently, and with special conditions. Probation's Recommendation at 1. The Government, on the other hand, recommends the Court impose a sentence that does not include a term of incarceration. Gov't Mem. at 10. In so saying, the Government acknowledges the serious nature of the underlying

8

offense and the need to promote general deterrence in white-collar cases. *Id.* at 7. However, the Government also urges the Court to consider numerous mitigating factors, including that Defendant does not appear to require any specific deterrence from future misconduct. *Id.* at 8. Furthermore, the Government highlights the strength of Defendant's personal character and argues a lenient sentence would avoid unwarranted sentencing disparities between Defendant and his co-conspirators in this case as well as, more generally, among similarly situated cooperating defendants in other spoofing cases who engaged in similar offensive conduct. The Government submitted its memorandum pursuant to Section 5K1.1 of the Sentencing Guidelines to apprise the Court of the substantial assistance provided by the Defendant with respect to the instant case.

The defense agrees with Probation and the Government: a non-incarceratory sentence is warranted here and instead recommends a sentence of time served. Def. Mem. at 1. In so saying, defense counsel urges the Court to consider a number of mitigating factors, including that Defendant was an inexperienced, junior trader when he was taught to spoof by superiors he trusted and admired. *Id.* at 6. According to the defense, Defendant's primary role when he started at Bear Stearns was to pick up sandwiches for his team and "sit there and listen and learn." *Id.* Defense counsel explains that Defendant, eager to excel in his position, relied upon his superiors to teach him how to trade and replicated the patterns he learned from them. *Id.* Further, defense counsel maintains Defendant was not initially aware that this trading practice was improper, but that once he realized it was illegal, Defendant immediately came forward and resigned from his position. *Id.* The defense also emphasizes the significant assistance Defendant provided the Government in the case against his co-conspirators, a choice, they claim came at a great personal cost, as Defendant once regarded those individuals as friends and mentors. *Id.* at 9.

9

Beyond the circumstances surrounding the instant offense, the defense urges the Court to consider Defendant's longstanding record as a caregiver within his family—both as a child when his mother was struggling with cancer, and now as a father to his two small children. *Id.* at 14, 22. Furthermore, defense counsel argues Defendant has dedicated much of his life to various charitable pursuits, beginning in high school when Defendant and his brothers established a scholarship in their mother's honor, devoted to assisting young men who were unable to afford tuition and to help families with terminally ill family members. *Id.* at 23. Defendant also led his family's efforts to start a family foundation and raise money for a hospital in Long Island, New York. *Id.* Defense counsel also notes Defendant founded a company with his father focused on helping disabled individuals find and secure employment. *Id.* at 24. Additionally, defense counsel has informed the Court, since pleading guilty to the instant offenses and resigning from JPMorgan, Defendant has volunteered at a nonprofit serving individuals with disabilities. *Id.* It is clear from defense counsel's representations Defendant is passionate about serving his community. The Court commends Defendant for his charitable work and urges him to continue to pursue this noble path.

The Court has also received numerous letters from Defendant's loved ones, each of which describe the myriad ways Defendant has touched their lives and which speak to Defendant's generosity and kindness. The Court has reviewed all of these submissions and thanks Defendant's loved ones for their continued support of Defendant.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5).

The parties have not drawn the Court's attention to any applicable policy statement here. Finding none on its own, the Court proceeds to the next section 3553 factor.

The Court has also carefully considered the Government's 5K1.1 letter, which apprises the Court of Defendant's substantial assistance. The Court acknowledges Defendant's significant cooperation with the Government and factors said cooperation into its sentencing decision.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7).

Restitution in this case is mandatory pursuant to 18 U.S.C. § 3663A. However, the Government is not seeking restitution in this case as Defendant's employer has paid restitution in full. PSR ¶ 76. Nevertheless, the Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after it imposes sentence to determine the specific amount Defendant owes to each victim.

### CONCLUSION

For the reasons set forth above, the Court determines a sentence of time served, a $200.00 mandatory special assessment, and no additional fine is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and its Addendum, barring any errors contained therein, to the extent they are not inconsistent with this opinion.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: June 28, 2023
       Brooklyn, New York